IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

OLAF CHILDRESS,                    )
                                   )
          Plaintiff,               )
                                   )        CASE NO. 2:12-cv-0117-MEF
v.                                 )           (WO – Publish)
                                   )
L.P. WALKER, *et al.*,             )
                                   )
          Defendants.              )

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the Motion for Summary Judgment (Doc. #15) filed

by Defendants L.P. Walker ("Walker"), O.V. Chavez[1] ("Chavez"), and Kevin Murphy

("Murphy") (collectively, "Defendants") on January 28, 2013.  The Court has reviewed the

submissions of the parties and finds that, for the reasons set forth below, the Defendants'

motion is due to be GRANTED IN PART and DENIED IN PART.

## I.  JURISDICTION AND VENUE

This Court has subject matter jurisdiction over the claims in this action under 28

U.S.C. §§ 1331 and 1343.  The parties do not contest personal jurisdiction or venue, and the

Court finds adequate allegations in support of both.

## II.  STANDARD OF REVIEW

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is

appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file,

---

[1]  Chavez was incorrectly named as "L.V." Chavez in the Complaint.

together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact." *Id.* at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322–23.

Once the moving part has met its burden, the non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. To avoid summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). On the other hand, a district court ruling on a motion for summary judgment must believe the evidence of the non-movant and must draw all justifiable inferences from the evidence in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). After the non-moving party has responded to the motion for summary judgment, the district court must grant summary judgment if there is no genuine dispute of material fact and the moving party is entitled to

a judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c).

## III.  PROCEDURAL HISTORY

On January 11, 2012, Plaintiff Olaf Childress ("Childress") filed suit in the Circuit Court of Montgomery County, Alabama against Walker, Chavez, Murphy, and the City of Montgomery Police Department.[2]  On February 7, 2012, this action was timely removed to this Court by Walker, Chavez, and Murphy, who invoked this Court's subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.  On March 2, 2012, the Court dismissed the City of Montgomery Police Department from this action for lack of subject matter jurisdiction, as police departments are not considered legal entities subject to suit under § 1983.  (Order, Doc. #9.)

All of Childress's claims against Walker, Chavez, and Murphy, the three remaining defendants, are brought pursuant to 42 U.S.C. §§ 1983 and 1985 for damages for alleged violations of his constitutional rights.  Specifically, the Complaint asserts the following claims: (1) deprivation of Childress's First Amendment rights in violation of 42 U.S.C. § 1983 (Count I); (2) deprivation of Childress's Fourth Amendment rights through false imprisonment in violation of 42 U.S.C. § 1983 (Count II); (3) deprivation of Childress's Fourth Amendment rights through unlawful arrest in violation of 42 U.S.C. § 1983 (Count III); (4) intentional infliction of emotional distress in violation of 42 U.S.C. § 1983 (Count

_____

[2] Although the Complaint also names certain fictitious parties as defendants, the Court will disregard this, as there is no fictitious party pleading in federal court.  *See Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010) ("As a general matter, fictitious-party pleading is not permitted in federal court."); *see also* Fed. R. Civ. P. 81(c)(1) ("These rules apply to a civil action after it is removed from a state court.").

3

IV); (5) deprivation of Childress's Fourth and Fourteenth Amendment rights through abuse of authority in violation of 42 U.S.C. § 1983 (Count V)[3]; (6) deprivation of Childress's Fifth and Fourteenth Amendment rights through Murphy's failure to instruct, supervise, and control Walker and Chavez and to otherwise prevent their unlawful actions in violation of 42 U.S.C. § 1983 (Count VI); (7) deprivation of Childress's constitutional rights, including those under the Fourth and Fourteenth Amendments, through Murphy's failure to train Walker and Chavez in violation of 42 U.S.C. § 1983 (Count VII); and (8) civil conspiracy to deprive Childress of his First Amendment rights in violation of 42 U.S.C. § 1985 (Count VIII).  Based on these claims, Childress seeks compensatory and punitive damages, plus attorneys' fees and costs.

Unfortunately, due to the overly vague and generalized style in which Childress's claims are pled, the Court has no clear picture as to which claims Childress is asserting against which defendant, and whether those claims are being asserted against a particular defendant in their individual capacity, their official capacity, or both.  Childress generally alleges that his claims against Walker, Chavez, and Murphy are brought against them in their "official and individual capacities," (Doc. #1-1, ¶¶ 2, 3 & 5), and Childress incorporates those allegations into each count of his Complaint.  (Doc. #1-1.)  However, the only count that specifically mentions "official capacity" is Childress's outrage claim.  (Doc. #1-1, ¶ 45)

---

[3]  Childress's § 1983 "abuse of process" claim is essentially a duplication of his § 1983 unlawful arrest and false imprisonment claims, as they are based on the same set of facts and are rooted in essentially the same purported violations of Childress's Fourth Amendment rights.  Thus, the Court will collectively analyze Counts II, III, and V of Childress's Complaint as claims for violations of Childress's Fourth Amendment rights under § 1983.

4

("Defendants, individually and collectively, in their official capacities . . . inflicted emotional distress on Plaintiff[.]").  Childress's seven remaining claims make no distinction as to whether they are official or individual capacity claims.  (Doc. #1-1.)  Thus, out of fairness and an abundance of caution, the Court will construe all of Childress's claims as being individual and official capacity claims.

The Complaint also makes repeated allegations against "Defendants" without providing further clarification as to exactly who Childress means.  (Doc. #1-1.)  This lazy pleading makes it markedly more difficult for the Court to discern the intended extent of Childress's claims.  As such, after reviewing the Complaint, the Court has concluded that it will construe Childress's claims as follows: Counts I, II, and III are against Walker and Chavez; Counts IV,[4] V, and VIII are against Walker, Chavez, and Murphy; and Counts VI and VII[5] are against Murphy.

---

[4]  Although Count IV references a "Defendant McCall," such a defendant is not named in the Complaint and, therefore, will not be considered as a party to this lawsuit.  (Doc. #1-1, ¶ 51.)

[5]  Count VII of Childress's Complaint is a prime example of the confusion created by vague and generalized pleading.  Count VII asserts a claim for violation of Childress's Fourth and Fourteenth Amendment rights through a failure to train and supervise police officers under § 1983.  This claim is asserted against "all Defendants."  (Doc. #1-1, ¶¶ 64, 65, 66 & 68.)  However, it is axiomatic that Walker and Chavez cannot be held liable for failing to train and supervise themselves.  Thus, the Court must construe Count VII of Childress's Complaint as being asserted solely against Murphy in his individual and official capacities.

## IV.  FACTS

The Court has carefully considered the submissions of the parties in support of and in opposition to the motion.  The submissions of the parties, viewed in the light most favorable to Childress, the non-moving party, establish the following material facts:

In January 2011, the Sons of Confederate Veterans ("SCV") applied to the City of Montgomery, Alabama for a public assembly permit.  The purpose of the permit was "to commemorate and reenact the 50th anniversary of the swearing in of Jefferson Davis as President of the Confederate States of America." (Doc. #15-1.)  The date requested for the assembly was February 19, 2011.  The permit application stated that patrons would begin assembling for the parade at 10:00 a.m. near the fountain at One Court Square and Dexter Avenue.  The parade would then proceed up Dexter Avenue to Bainbridge Street and would stop at the steps of the Capitol where a rally would be held.  The permit stated that the event would last from noon until 2:00 p.m., with approximately 1,000 people participating.  SCV paid the City of Montgomery a $100 permit fee, and the permit request was approved by Murphy on February 4, 2011.  There is no evidence in the record that the permit was for the exclusive use of the permitted area.

During the relevant time period, Walker was employed as a lieutenant with the City of Montgomery Police Department ("MPD") in the traffic division.  Walker has been a lieutenant with MPD since 1999 and has been with the department for a total of 29 years.  Walker has had significant training with MPD and has worked numerous events similar to the SCV assembly.  Chavez was employed as a sergeant with MPD in the traffic division and

was the department's permit supervisor.  Chavez has supervised permits for MPD for approximately 10 years and was the permit supervisor for the SCV event.

On February 19, 2011, the day of the SCV event, Walker and Chavez were assigned to work off-duty at the event to provide traffic control and safety.  MPD bike officers were also present as part of their regular patrols, in addition to members of MPD SWAT unit.  Additional police presence was needed to control any possible violence that might arise at the event.  As permit supervisor, Chavez had reviewed the SCV permit before the event began, but Walker had not; he simply relied on Chavez's instructions.  Walker and Chavez erected barricades to designate the area where the SCV members were to assemble before the parade started.  Walker and Chavez erected these barricades on Montgomery Street, Commerce Street, and Dexter Avenue, including parts of the public sidewalk, to form a "controlled" area around One Court Square for the assembly.  These barricades were also erected to prohibit vehicular traffic on those streets.  Neither officer disputes that the SCV assembly was a public event and that the general public could enter the barricaded area.  There was no fee charged to attend the event.

Although Childress is not a member of the SCV, he was invited[6] to attend the event on February 19, 2011, where he was handing out copies of a newspaper he produces, *The First Freedom*, "to the people that wanted – that held their hands out and asked for a copy."[7]

---

[6] Childress does not specify who invited him to the SCV event, but his deposition testimony implies that several members of the SCV invited him via email.

[7] While Childress is not a member of the SCV, he testified that his newspaper "[a]bsolutely supports the SCV in every way possible that we can think of."  (Doc. #15-4.)

Childress testified that he was handing out his newspapers on the public sidewalk by One Court Square and Montgomery Street, which was within the barricaded assembly area, approximately a half hour before the parade began. However, according to Childress, the barricaded areas were not clearly marked, and many individuals, including individuals not affiliated with the SCV, were moving in and out of the barricaded areas.

One of the SCV event organizers, Thomas Strain ("Mr. Strain"), complained to Chavez that Childress was disrupting the assembly and that his newspaper was offending some of the attendees. Indeed, Walker testified that he saw "people take [Childress's newspaper], look at it. A couple of them threw it down. One tossed it in a garbage can." (Doc. #15-2.) Mr. Strain requested that Chavez ask Childress to leave the barricaded area so that the SCV could have a peaceable assembly without a disturbance. As a result, at approximately 10:30 a.m., before the SCV parade began, Chavez and Walker approached Childress while he was passing out his newspapers on the public sidewalk by One Court Square, within the barricaded assembly area. Chavez told Childress that some of the SCV people said he was causing a disturbance and requested that he stop passing out his newspapers and move from the barricaded area. Childress responded that he had a right to pass out his newspapers and offered to continue passing them out on the public sidewalk next to, but outside of, the barricaded area.[8] Childress claims that Chavez told him that he could

---

[8] In other words, Childress claims that, when Chavez approached him, he offered to stop passing out his newspapers in the barricaded area where the SCV members were assembling for the parade and to continue passing them out on the public sidewalk right next to, but outside of, the barricaded area. However, there is no indication in the record that Childress was giving his newspapers to anyone other than individuals who asked or gestured for a copy.

not pass out his newspapers there either and that Childress needed to move 15 to 20 feet down Montgomery Street or he would be arrested.  At that same time, a couple walked by Childress, Chavez, and Walker, and Childress handed them a newspaper, despite Chavez's previous order for him to stop and move from the area or be arrested.  Consequently, Chavez and Walker placed Childress under arrest for disorderly conduct.  Both Walker and Chavez testified that Childress resisted their attempts to arrest him and tried to pull away from them; however, Childress denies this allegation, claiming that he was not pulling away from the officers, but even if he were, it was only so that he could hand his remaining newspapers to some of his subscribers who were sitting on a nearby bench.  Childress was taken to the city jail and "roughed up for the rest of the day."[9]  (Doc. #15-3.)

Neither Walker nor Chavez personally witnessed Childress doing anything they believed disturbed the SCV assembly.  Chavez testified that while he did not personally believe Childress was creating a disturbance, the SCV did and that is why he ordered Childress to move from the assembly area.  Although Walker testified that he believed Childress's intent was to create a disturbance or inflammatory situation by passing out his newspapers at the SCV event, both officers testified that, at the time of his arrest, Childress was not using any foul language, was not berating or threatening anyone, was not making any unreasonable or loud noises, was not making any obscene gestures, and was not obstructing any vehicles or pedestrians.  Walker testified that Childress's presence alone and his

---

[9] Despite this allegation, Childress's Complaint does not contain an excessive force claim.

distribution of *The First Freedom* was what they considered a disturbance to the SCV assembly.  Although Mr. Strain had skimmed *The First Freedom* and considered it "anti-semitic" and offensive, neither Walker nor Chavez read Childress's newspaper before they arrested him; instead, they relied solely on Mr. Strain's complaint that Childress was disturbing the SCV assembly.  Walker testified that the content of Childress's newspaper "was irrelevant" to them.  However, Childress claims that other non-SCV members were allowed to pass out newspapers at the assembly in the same area as he was without any disturbance from MPD.

On May 19, 2011, Childress was tried and convicted in Montgomery municipal court for disorderly conduct.  This lawsuit followed.

## V.  DISCUSSION

### A.    Claims Pursuant to 42 U.S.C. § 1983

All but one of Childress's claims in this action are brought pursuant to 42 U.S.C. § 1983.  Section 1983 provides a remedy when a person acting under color of state law deprives a plaintiff of a right, privilege, or immunity secured by the Constitution, laws, or treaties of the United States.  42 U.S.C. § 1983; *see, e.g., Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (explaining that "§ 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred") (internal quotations omitted)); *Cummings v. DeKalb County*, 24 F.3d 1349, 1355 (11th Cir. 1994).  Section 1983 provides, in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom,

10

> or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  In this case, Childress alleges that the Defendants, through several acts performed under color of law, deprived him of various rights conferred through the United States Constitution.  As a result, for each of Childress's claims rooted in § 1983, he must prove that (1) Defendants acted "under color" of law as defined by § 1983 and cases interpreting that language, and (2) Defendants' actions deprived him of a specific constitutional right.  There is no dispute that Defendants were acting under color of law in connection with Childress's arrest.  Thus, the issue before the Court is whether, through Defendants' conduct, Childress suffered a deprivation of some constitutional right.

Childress has also asserted § 1983 claims against Walker, Chavez, and Murphy in their official capacities.  Because an official capacity suit is considered a suit against the entity itself, this means that Childress has effectively asserted claims against the City of Montgomery as well as the individual officer defendants.  *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978) (holding that local governments are "persons" that can be sued under § 1983).  This places an additional burden on Childress to establish a "direct causal link between a municipal policy or custom" and his alleged constitutional deprivations, as a municipality cannot be liable under § 1983 for the acts of its employees under a theory of *respondeat superior*.  *See Bd. of County Comm'rs v. Brown*, 520 U.S. 397,

403 (1997); *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (explaining that a municipality is liable under § 1983 only if it is found to have itself caused the violation of federal law or deprivation of federally created rights).  Applying this legal framework, the Court will now address the merits of Childress's § 1983 claims.

### 1.    Individual Capacity Claims Against Walker and Chavez

Childress claims that Walker and Chavez violated his First, Fourth, and Fourteenth Amendment rights by unlawfully arresting him without probable cause and by falsely imprisoning him, thus curtailing his ability to speak freely and distribute his newspapers. Walker and Chavez argue that they are entitled to summary judgment on these claims because of qualified immunity.

### a.    Overview of Qualified Immunity

"Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Stovall v. Allums*, No. 1:04-cv-659-F, 2005 WL 2002069, at *4 (M.D. Ala. Aug. 16, 2005) (quoting *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002)).  "The purpose of this immunity is to allow government officials to carry out their discretionary duties without fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law."  *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotations and citations omitted).  "Entitlement to immunity is the rule, rather than the exception."  *Samarco v. Neumann*, 44 F. Supp. 2d 1276, 1291 (S.D. Fla. 1999) (citing

*Lassiter v. Ala. A&M Univ.*, 28 F.3d 1146 (11th Cir. 1994)).

To benefit from the protection of qualified immunity, the "public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful actions occurred." *Id.* (internal quotations omitted).  In this case, there is no dispute that Walker and Chavez were acting within their discretionary authority when they arrested Childress.[10]  *See Naccarato v. Oliver*, 882 F. Supp. 297, 304 (E.D.N.Y. 1995) (applying defense of qualified immunity to off-duty officer who engaged in a fight while working as bouncer); *Lee,* 284 F.3d at 1194 (holding that there was "no doubt" an officer who pulled over a suspect for a traffic offense and arrested her was acting within the scope of his discretionary authority); *Vinyard*, 311 F.3d at 1346–47 (holding that an officer was acting within the scope of his discretionary authority when he arrested a subject and transported him to jail).  "Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Id.* Qualified immunity is not appropriate if the plaintiff can show that the defendant, while acting within his discretionary authority, "violated clearly established statutory or constitutional law."  *Wood v. Kesler*, 323 F.3d 872, 877–78 (11th Cir. 2003).

For many years, it was at this point that courts would follow the *Saucier* test to

---

[10]  Moreover, the undisputed evidence in this case establishes that the officers, although working off-duty, arrived at the event on MPD motorcycles and worked with other on-duty MPD officers and the SWAT unit.  Childress further admits that Chavez and Walker were MPD officers at the time of the events giving rise to this lawsuit.

complete its qualified immunity analysis. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 223 (2009). *Saucier* mandated a two-step sequence for resolving qualified immunity claims by government officials. *Id.* First, courts would ask, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Id.* "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Id.* However, "[i]f a constitutional right would have been violated under the plaintiff's version of the facts, the next, sequential step is to ask whether the right was clearly established." *Id.* The standard for deciding if an officer's conduct violated clearly established law is purely objective; an officer's subject intent or beliefs are irrelevant. *See Von Stein v. Brescher*, 904 F.2d 572, 579 (11th Cir. 1990). If the plaintiff cannot prove that the officer's conduct violated a clearly established constitutional right, then qualified immunity applies.

However, a unanimous Supreme Court effected a paradigm shift in the law of qualified immunity in 2009 when it decided *Pearson v. Callahan*, which held that the *Saucier* procedure was no longer mandatory. 555 U.S. at 236 ("On reconsidering the procedure required in *Saucier*, we conclude that, while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory."). This decision now permits district courts "to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* As a result, there is no longer a requirement that district courts expend

14

time and resources first resolving a difficult constitutional question in cases where it is obvious that a constitutional right was not "clearly established," but it is "far from obvious whether in fact there is such a right."  *Id.* at 237.

While the Court recognizes that dispensing with the *Saucier* procedure is beneficial in many instances, this is not always the case.  Indeed, this case does not implicate one of many reasons the *Pearson* Court gave for opting out of the *Saucier* procedure, including the presence of uncertain questions of state law that may affect the resolution of constitutional issues, an insufficiently developed factual record at the motion to dismiss stage, when qualified immunity is often raised, and the risk of bad decision-making in lower courts where constitutional questions are often not well-briefed.  *Id.*  Because the Court sees no reason to opt-out of the *Saucier* procedure in this case, it will follow this procedure, first determining whether a constitutional violation could have occurred under Childress's versions of the facts.  If such a violation could have occurred, only then will the Court consider whether the constitutional right was clearly established.  If the answer to either of these questions is "no", then the officers will be entitled to qualified immunity on Childress's constitutional claims against them in their individual capacity.

### b.    First and Fourth Amendment Claims

Counts I, II, III, and V of Childress's Complaint allege that Walker and Chavez violated his First, Fourth, and Fourteenth[11] Amendment rights by unlawfully arresting and

---

[11]  Because Childress's claims against Walker and Chavez are based on wrongful arrest, detention, and violation of his free speech rights, they are properly addressed under the First and

detaining him while he was exercising his right to speak freely and to distribute his newspaper.  (Doc. #1-1, Counts I, II, III & V.)  However, when a police officer has probable cause to believe that a person is committing a particular public offense, an officer may lawfully arrest him, even though the offender is engaged in protected First Amendment activity at the time of the arrest.  *See Willis v. Siegleman*, 307 F. Supp. 2d 1236, 1241 (M.D. Ala. 2004) (citing *Redd v. City of Enterprise*, 140 F.3d 1378, 1383 (11th Cir. 1998)).  As such, while Childress's efforts in this case are substantially focused on establishing a violation of his First Amendment rights, the viability of his First Amendment claim hinges on the legality of his arrest under the Fourth Amendment.  Stated differently, if the officers had probable cause to arrest Childress for disorderly conduct on February 19, 2011, then his First Amendment claim fails as a matter of law.  Therefore, the Court will initially address whether Walker and Chavez are entitled to qualified immunity for their arrest and subsequent detention of Childress.  In so doing, the Court keeps in mind "the fact that we generally accord official conduct a presumption of legitimacy."  *Epps v. Watson*, 492 F.3d 1240, 1243 (11th Cir. 2007) (internal quotations and citations omitted).  Nonetheless, because this is Defendants' motion for summary judgment, the Court must view all the evidence and draw

---

Fourth Amendments, and not the Fourteenth.  Indeed, "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims."  *Battiste v. Lamberti*, 571 F. Supp. 2d 1286, 1314 n.2 (S.D. Fla. 2008); *see also Albright v. Oliver*, 510 U.S. 266, 274 (1994); *Hamm v. Powell*, 893 F.3d 293, 294 (11th Cir. 1990) (recognizing that false arrest claims under § 1983 are analyzed solely as unreasonable seizure claims under the Fourth Amendment and not as claims for deprivation of due process under the Fourth Amendment).

all factual inferences therefrom in the light most favorable to Childress, as the non-movant, and determine whether that evidence could reasonably sustain a jury verdict in his favor.

"A warrantless arrest without probable cause violates the Fourth Amendment and forms a basis for a section 1983 claim." *Ortega v. Christian*, 85 F.3d 1521, 1525 (11th Cir. 1996) (citing *Marx v. Gumbinner*, 905 F.2d 1503, 1505 (11th Cir. 1990)). "An arrest made with probable cause, however, constitutes an absolute bar to a section 1983 action for false arrest." *Id.*

> Probable cause exists where the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed. Probable cause does not require overwhelmingly convincing evidence, but only reasonably trustworthy information, and probable cause must be judged not with clinical detachment but with a common sense view to the realities of normal life.

*Marx v. Gumbinner*, 905 F.2d 1503, 1505 (11th Cir. 1990).

However, to receive the protection of qualified immunity, an officer needs only *arguable*, rather than actual, probable cause. *Jones v. Cannon*, 174 F.3d 1271, 1283 n.3 (11th Cir. 1999) ("Arguable probable cause, not the higher standard of actual probable cause, governs the qualified immunity inquiry."). Thus, "[i]n the context of a wrongful arrest claim, an officer will be protected by qualified immunity if he had arguable probable cause to effectuate the arrest." *Brown v. Head*, 228 F. Supp. 2d 1324, 1328 (M.D. Ala. 2002) (internal quotations omitted). Arguable probable cause exists if, under the facts and circumstances, a reasonable officer *could* — not necessarily would — have believed that probable cause was present for an arrest. *See Durruthy v. Pastor*, 351 F.3d 1080, 1089 (11th

Cir. 2003).  This inquiry is objective, and the Court must ask whether the officer's actions were objectively reasonable regardless of the officer's underlying motivation or intent.

Under Childress's version of the facts, the Court is of the opinion that Walker and Chavez did not have arguable probable cause to arrest Childress for disorderly conduct as that crime is defined under Alabama law.[12]  To arrest an individual for a misdemeanor like disorderly conduct without a warrant, the offense much be committed in the officer's presence.  *Dupree v. City of Phenix City, Ala.*, No. 3:10-cv-970-WKW, 2012 WL 4378585, at *6 (M.D. Ala. July 2, 2012); Ala. Code § 15-10-3(a)(1) (prohibiting misdemeanor arrest when offense not committed in officer's presence).  Both Walker and Chavez testified that they did not personally witness Childress causing a disturbance at the SCV event; instead, they relied solely on Mr. Strain's complaint.  Indeed, the evidence shows that Mr. Strain's complaint was the only evidence that Walker and Chavez had at the time of Childress's arrest

---

[12]  Section 13A-11-7 of the Ala. Code defines disorderly conduct as follows:

(a) A person commits the crime of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:
(1) Engages in fighting or in violent tumultuous or threatening behavior; or
(2) Makes unreasonable noise; or
(3) In a public place uses abusive or obscene language or makes an obscene gesture; or
(4) Without lawful authority, disturbs any lawful assembly or meeting of persons; or
(5) Obstructs vehicular or pedestrian traffic, or a transportation facility; or
(6) Congregates with other person in a public place and refuses to comply with a lawful order of the police to disperse.

Ala. Code § 13A-11-7.  Although never clearly stated, it appears from Defendants' arguments that Childress was charged with violating subsection (4) of this statute.  (Doc. #16.)  Disorderly conduct is a Class C misdemeanor.

18

to indicate that he had violated, was violating, or was about to violate the disorderly conduct statute so as to justify his arrest, evidence which Childress disputes.

While Walker did testify that he witnessed some individuals take Childress's newspaper and throw it down or place it in the garbage, there is no indication in the record that Childress was forcing anyone to take his newspapers. There is also no evidence that, at the time of Childress's arrest, he was using loud, abusive, or profane language, was making threats or obscene gestures, was blocking pedestrian or vehicular traffic, or was making unreasonable noise. *Compare Lewis v. Blue*, 774 F. Supp. 2d 1164, 1181 (M.D. Ala. 2011) ("Plaintiff's loud and profane language provided arguable cause for a disorderly conduct arrest" under Ala. Code § 13A-11-7), *and Redd v. City of Enterprise*, 140 F.3d 1378, 1382–83 (11th Cir. 1998) (finding that officers had probable cause to arrest individual for disorderly conduct when he was speaking so loudly that he could be heard over traffic and passers-by complained of his loudness), *and Gold v. City of Miami*, 121 F.3d 1442, 1446 (11th Cir. 1997) (finding that probable cause existed for disorderly conduct arrest when the plaintiff twice used profanities in a loud voice, in a public place, in the presence of others), *with Walker v. Briley*, 140 F. Supp. 2d 1249, 1258 (N.D. Ala. 2001) (finding no arguable probable cause for a disorderly conduct arrest where the plaintiff's evidence showed that the plaintiff had not been loud, used profanity, or used a belligerent tone in voicing his displeasure to two police officers who had pulled him over); *Willis v. Siegleman*, 307 F. Supp. 2d 1236, 1242 (M.D. Ala. 2004) (finding that officer had no probable cause to arrest an individual for disorderly conduct absent evidence that the plaintiff had behaved violently,

19

made unreasonable noise, used obscene language, or disturbed a lawful assembly).

While Walker and Chavez argue that Childress refused an order to move just a few feet down the road, it does not appear that Childress's arrest was based on his refusal of a dispersal order.  In any event, Childress claims that he offered to move just outside of the barricaded area so that he could continue handing out his newspapers, but the officers insisted that he move further down Montgomery Street.  Walker and Chavez also argue that Childress resisted their attempts to arrest him, but Childress's evidence, which the Court must credit at this stage of the proceedings, claims the opposite.

The fact that the SCV event was a permitted event does not affect the Court's probable cause analysis.  The SCV event was conducted on public streets and was free and open to the general public.  While the SCV did obtain a permit for the event, it was not an exclusive permit that would give them a right to the exclusive use of the streets and areas designated for use in the permit.  While Walker and Chavez rely on *Hurly v. Irish-American Gay, Lesbian and Bisexual Group of Boston* for the proposition that the SCV could not be compelled to include Childress and his message in their event, this case does not create probable cause where none otherwise exists.  515 U.S. 557 (1995).  In any event, Childress was not attempting to participate in the SCV event itself as a vendor or marcher or some other component of the group; he instead was acting alone and distributing newspapers to attendees of the event.  As the Third Circuit recognized in *Startzell v. City of Philadelphia*, 533 F.3d 183, 194 (7th Cir. 2008), *Hurley* does not authorize a private entity to exclude a group or individual from attending a private-sponsored event in a public forum that is free

and open to the general public, even if the event was permitted.  "There is no basis to read *Hurley* as circumscribing the long line of authority upholding free access by the general public to street festivals and other events held in traditional public fora."  *Id.* at 195.  "[N]either the grant of a permit nor anything in *Hurley* alters that still viable principle."  *Id.* While the Court does recognize that *Hurley* and *Startzell* involved different claims than presented here (*i.e.*, challenges to the application of a state law or municipal ordinance, rather than qualified immunity),[13] they are instructive to the limited extent they recognize a permit does not give its holder the unfettered ability to exclude those who are engaged in protected speech at a public event that is being held in a public forum, and does not give a police officer probable cause to arrest those individuals when none otherwise exists.

In sum, viewing the facts in a light most favorable to Childress, Walker and Chavez did not have probable cause to arrest or detain Childress for disorderly conduct without a warrant on February 19, 2011.  Because Childress has established a violation of his Fourth Amendment rights, based on his version of the facts, the Court will now move to the second step of the qualified immunity analysis: whether the right to be free from a warrantless arrest and detention without probable cause is "clearly established."  The Court holds that it is. Indeed, it is clearly established that seizing and detaining an individual without reasonable suspicion or probable cause violates the Fourth Amendment.  *See Dupree v. City of Phenix City, Ala.*, No. 3:10-cv-970-WKW, 2012 WL 4378585, at *7 (M.D. Ala. July 2, 2012); *see*

---

[13]  The Court also recognizes that the constitutionality of the City of Montgomery's permit procedures or the disorderly conduct statute have not been challenged here.

*also  Von Stein v. Brescher*, 904 F.2d 572, 579 (11th Cir. 1990).  Given this clarity in the law and "the firmly entrenched nature of the right" to be free from a warrantless arrest and detention absent probable cause, the Court finds that, under Childress's version of the facts, it would be clear to a reasonable officer that Walker and Chavez's arrest of Childress was unlawful.  Therefore, Walker and Chavez are not entitled to qualified immunity.

In light of this conclusion, as well as the numerous factual disputes in this case, Defendants' motion for summary judgment on Childress's Fourth Amendment claims is DENIED.  Having made this determination, Walker and Chavez are likewise not entitled to summary judgment on Childress's First Amendment claim.  *See Willis*, 307 F. Supp. 2d at 1243.  The Court finds that issues of fact exist as to Childress's allegation of a violation of his First Amendment rights, and Walker and Chavez have failed to produce evidence that Childress's First Amendment rights were not violated.[14]  Accordingly, Defendants' motion for summary judgment on Childress's First Amendment claim is DENIED.

---

[14] The crux of Walker and Chavez's argument on summary judgment as to Childress's First Amendment claim is that because Walker and Chavez had probable cause to arrest Childress, his First Amendment claim must fail as a matter of law.  This argument is unavailing because the Court has found that Walker and Chavez did not have probable cause to arrest Childress for disorderly conduct.  Moreover, at the time of his arrest, Childress was engaged in protected speech in a traditional public forum (*i.e.*, the public streets of Montgomery during a non-exclusive permitted event that was free and open to the general public), *see Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983) (holding that traditional public fora include public streets), and the only basis given for his arrest was that his distributing *The First Freedom* was causing a disturbance and offending some of the SCV event attendees.  While Walker testified that the content of Childress's newspaper was "irrelevant" to them in making the arrest, the evidence, which also includes testimony by Childress that other individuals were allowed to distribute newspapers that day in the same area as he was without disturbance by MPD, could lead a reasonable factfinder to conclude that Childress's arrest was based upon his distribution of his newspaper and was a violation of his First Amendment rights.

###### c.    Claim for Intentional Infliction of Emotional Distress

Finally, Count IV of Childress's Complaint asserts a claim against Walker and Chavez in their individual capacities[15] for intentional infliction of emotional distress under § 1983. (Doc. #1-1, Count IV.)  Specifically, Childress alleges that Walker and Chavez inflicted emotional distress on him "by maliciously prosecuting [him], or by abusing the lawful process by unlawful purpose, or by violating [his] constitutional rights, or by falsely arresting and imprisoning [him], by conspiring against [him], or by interfering with [his] civil rights by threats, coercion, or intimidation, or knew or should have known that emotional distress was the likely result of their conduct."  (Doc. #1-1.)

Unlike Childress's First and Fourth Amendment claims, his individual capacity intentional infliction of emotional distress claim against Walker and Chavez under § 1983 fails as a matter of law.  First, Childress conceded this claim when he failed to meaningfully address it in response to Defendants' summary judgment motion.  *See Glass v. Lahood*, 786 F. Supp. 2d 189, 210 (D.D.C. 2011) ("[I]t is well understood . . . that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded." (internal quotations omitted)).  Second, Childress has not demonstrated or even alleged the denial of a specific federal constitutional right or privilege to form the predicate for a § 1983 intentional infliction of emotional distress claim.  While there is no doubt that Walker and

---

[15] Childress also asserts this claim against Walker and Chavez in their official capacities.

Chavez's actions likely upset Childress, this alone does not violate his constitutional rights. *See Martin v. LaBelle*, 7 Fed. App'x 492, 495 (6th Cir. 2001).

Moreover, even though Childress's intentional infliction of emotional distress claim was brought solely under § 1983, this claim would still fail even if it had been brought under Alabama law. The tort of outrage (also known as intentional infliction of emotional distress) is an extremely limited cause of action, and is generally recognized in Alabama in three limited circumstances: (1) wrongful conduct in the family-burial context; (2) barbaric methods employed to coerce an insurance settlement; and (3) egregious sexual harassment. *E.g., Potts v. Hayes*, 771 So. 2d 462, 465 (Ala. 2000). A defendant's conduct must also be "extreme and outrageous" to the point that it caused emotional distress "so severe that no reasonable person could be expected to endure it." *Id.* In this case, Walker and Chavez's actions, even when viewed in the light most favorable to Childress, were not so extreme and outrageous as to give rise to an intentional infliction of emotional distress claim. As such, Defendants' motion for summary judgment on Childress's § 1983 intentional infliction of emotional distress claim against Walker and Chavez in their individual capacities is GRANTED.

### 2.   Individual Capacity Claims Against Murphy

Childress's Complaint also asserts constitutional claims against Murphy in his individual capacity. As with Walker and Chavez, Childress asserts a § 1983 intentional infliction of emotional distress claim against Murphy. (Doc. #1-1, Count IV.) However, because the Complaint is unclear, the Court is also construing Childress's Complaint as

asserting claims against Murphy, as Walker and Chavez's supervisor, for abusing his authority, for refusing or neglecting to prevent Walker and Chavez's alleged unlawful conduct, and for failing to properly and adequately train and supervise Walker and Chavez. (Doc. #1-1, Counts V, VI & VII.)  Childress asserts these claims against Murphy pursuant to § 1983, claiming that Murphy's actions violated his Fifth, Fourth, and Fourteenth[16] Amendment rights.

"It is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability."  *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003).  "A supervisor may only be subject to 'direct liability' for his own actions or, under limited circumstances, supervisory liability for the actions of his subordinates."  *Battiste*, 571 F. Supp. 2d at 1300.  A supervisor is "liable for the actions of his subordinates either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional violation."  *Id.* (internal quotations omitted).  "One of the ways to establish such a 'causal connection' is by offering facts supporting 'an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them.'"  *Id.* (quoting *Cottone*, 326 F.3d at 1360).  "'The standard by which a

---

[16] Again, because Childress's Complaint provides an explicit textual source of constitutional protection against a particular sort of government behavior (*i.e.*, the Fourth and Fifth Amendments), these will prove the guide for analyzing his individual claims against Murphy, rather than the Fourteenth Amendment.  *See Battiste*, 571 F. Supp. 2d at 1314 n.2.

supervisor is held liable in [his] individual capacity for the actions of a subordinate is *extremely* rigorous.'" *Id.* (emphasis added).

Murphy argues that Childress has failed to set forth facts or evidence sufficient to sustain any claim against him in his individual capacity. The Court agrees. Childress has neither alleged nor pointed to any evidence tending to show that Murphy was personally involved with Childress's arrest and detention, or that there was any connection, much less a causal connection, between any of Murphy's actions and the alleged constitutional violations perpetrated on Childress by his subordinates, Walker and Chavez. Absent any such evidence, no reasonable juror could impose liability on Murphy in his individual capacity in this case. Therefore, to the extent Childress's Complaint asserts any § 1983 claims against Murphy in his individual capacity, Defendants' motion for summary judgment is GRANTED as to those claims.

### 3.    Official Capacity Claims

As explained above, a § 1983 claim filed against government officers in their official capacities is, in essence, a claim against the governmental entity of which the officer is an agent. *See, e.g., Monell*, 436 U.S. at 690. In this case, Childress has sued Walker, Chavez, and Murphy in both their individual and official capacities. Therefore, even though Childress did not name the City of Montgomery as a defendant in this lawsuit, it is clear that the City of Montgomery is the target of his official capacity claims, and therefore, the Court

will treat these claims[17] as claims against the City of Montgomery, rather than the individual officer defendants.

Because Childress is seeking to recover from the City of Montgomery by suing Walker, Chavez, and Murphy in their official capacities, he must overcome the "strict limitations on municipal liability" that the Supreme Court has put in place. *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998). A municipality is liable under § 1983 only if it is found to have caused the violation of federal law or deprivation of federally created rights *itself*; a municipality cannot be held vicariously responsible under a theory of *respondeat superior*. *Skop v. City of Atlanta*, 485 F.3d 1130, 1145 (11th Cir. 2007). "Instead, a municipality may be held liable for the actions of a police officer only when municipal 'official policy' causes a constitutional violation." *Gold*, 151 F.3d at 1350; *Monell*, 436 U.S. at 690. Thus, in the instant case, Childress "must show either that the alleged violation in question was 'caused by an existing unconstitutional municipal policy, which policy can be attributed to a municipal policy maker or that the alleged violation is attributable to 'inadequate police training.'" *Hamilton v. City of Jackson*, 508 F. Supp. 2d 1045, 1056 (S.D. Ala. 2007) (quoting *Schmek v. Monroe Cty.*, 954 F.2d 1540, 1544 (11th Cir. 1992)).

---

[17] As previously noted, Childress's overly generalized Complaint makes it quite difficult, if not impossible, for the Court to discern with any degree of certainty which claims are being asserted against which defendant, and whether those claims are being asserted against a particular defendant in his individual or official capacity, or both. Therefore, out of fairness and an abundance of caution, the Court will presume that Childress intended to assert all of his claims against defendants in their official capacity as well as their individual capacity.

Childress contends that his arrest, detention, and resulting curtailment of his free speech rights were the result of an official custom or policy of the City of Montgomery. Specifically, Childress argues that, with knowledge that its policies and practices were depriving people of their free speech rights, the City of Montgomery and Murphy ratified Walker and Chavez's actions and were deliberately indifferent to these constitutional deprivations and others that may be "occurring on a regular and continuing basis." (Doc. #19.) Childress, however, has failed to identify or provide any evidence of an actual "policy or custom" of the City of Montgomery that could form the predicate for his § 1983 official capacity claims.[18] He has pointed to no written custom or policy of MPD, such as a training

---

[18] In his Complaint, Childress alleges that the "policies, practices and customs as applied to Defendants" include, in pertinent part:

 a) Defendants, through the highest ranking available supervisory personnel, or designees, approved of, acquiesced to and/or condoned the violations in general, thereby ratifying and approving the wrongful acts of their agents and employees in their respective governmental agencies. Specifically, decision-makers should not have allowed its agents and employees to seek and obtain Plaintiff's arrest and subject Plaintiff to an unlawful arrest and false imprisonment in the course thereof. The Defendants, respectively, ratified the conduct of its subordinates and those actions therefore became policy.

 b) Defendants named in the preceding paragraphs of this claim for relief failed, through knowing and/or reckless and/or deliberate and/or conscious indifference, to instruct, supervise, control and discipline, on a continuing basis, the duties of the personnel and officials to refrain from unlawful actions leading to the arrest, intimidation and detention applied against Plaintiff. Specifically, Defendants did not train and/or instruct and/or control its officers properly because its officers would not otherwise seek and obtain Plaintiffs [sic] arrest and detention, to intimidate and to subject Plaintiff to the false imprisonment under the facts of this case. These deficiencies were the moving force behind Plaintiff's claim.

(Doc. #1-1, ¶ 68.) However, simply calling something a "policy, practice, or custom" does not make

or personnel policy, or an unwritten practice "that is so widespread and 'so permanent and well settled as to constitute a custom or use with the force of law'" to support this municipal claim. *Flowers v. Patrick*, 869 F. Supp. 2d 1331, 1335 (M.D. Ala. 2012) (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)).  Absent such evidence, Childress cannot prove that a "policy or custom" of the City of Montgomery was the "moving force" behind any purported constitutional violations he suffered or the "impetus behind any alleged unconstitutional actions of the individual officers."  *See Hamilton*, 508 F. Supp. 2d at 1056; *Monell*, 436 U.S. at 691.  Finally, while Childress alleges that Murphy is a final policymaker for the City of Montgomery, he has made no showing whatsoever that the alleged constitutional deprivations he suffered can be tied to any policy attributable to Murphy.

Still, even in the absence of a policy or custom, inadequate police training or supervision can establish § 1983 municipal liability.  Although the Complaint in the case leaves unclear the full scope of Childress's official capacity claims, it appears from his opposition to Defendants' motion for summary judgment that inadequate police training and supervision form the crux of his official capacity claims.  There are only limited circumstances in which an allegation of failure to train or supervise can be the basis for municipal liability under § 1983, namely, "where the municipality inadequately trains or supervises its employees, this failure to train or supervise is a city policy, and that city policy

---

it so, particularly in the absence of any supporting evidence.  Indeed, the submissions of the parties have made it clear to the Court that Childress has failed to identify any specific "policy or custom" of the City of Montgomery that *caused* his alleged constitutional deprivations.

results in the employees violating a citizen's constitutional rights." *Hamilton*, 508 F. Supp. 2d at 1056. "It is only when the failure to train amounts to 'deliberate indifference' that it can properly be characterized as a 'policy' or 'custom' necessary for Section 1983 liability to attach." *Id.* (quoting *Canton*, 489 U.S. at 389).

"To establish a 'deliberate or conscious choice' or such 'deliberate indifference, a plaintiff must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take action." *Id.* (quoting *Bd. of Cnty. Comm'rs of Bryan, Oklahoma v. Brown*, 520 U.S. 397, 407–09 (1997)). A plaintiff cannot rely on the actions of police officers during a single incident of alleged unconstitutional conduct to establish "deliberate indifference." *Griffin v. City of Clanton, Ala.*, 932 F. Supp. 1359, 1371 (M.D. Ala. 1996). Instead, a plaintiff must establish a municipality's knowledge of a need for training or supervision in a particular area through showing knowledge or awareness of a history of widespread prior abuse or a prior incident where constitutional rights were similarly violated. *Gold*, 151 F.3d at 1351. Absent evidence of prior incidents or abuse, a municipality cannot have been deliberately indifferent to the need to train or supervise in a particular area unless the need was obvious and the likelihood of a constitutional violation was highly predictable.

Rather than pointing to some defect in the written policies or procedures of the City of Montgomery with respect to training or supervision of officers, or offering evidence of prior abuse or prior incidents of similar constitutional violations as those allegedly suffered by Childress, Childress attempts to establish a basis for municipal liability by arguing that

30

the City of Montgomery's Police Chief and arguably its final policymaker, Murphy, ratified and enforced "policies of the defendants by arresting those persons lawfully assembled in a public place who exercises [sic] their right to freedom of speech.  With knowledge that the policies and practices of the defendants had and are depriving people of freedom of speech, including Plaintiff, with an unlawful arrest, the City of Montgomery and Murphy ratified those acts."  (Doc. #19.)

However, Childress has presented no evidence to support a claim that the City of Montgomery was deliberately indifferent to the need to train or supervise its officers in arresting persons who are exercising their right to free speech at another group's permitted assembly.  Childress has presented no evidence of prior abuse or prior incidents of constitutional violations committed by officers that are similar to those that he allegedly suffered.  Childress has also pointed to no evidence indicating that the City of Montgomery was on notice of a need to train or supervise its officers in a particular area, namely, arresting individuals who are exercising their right to freedom of speech at another group's permitted assembly, and that the City of Montgomery made a deliberate choice not to take any action.  Summarily stating that Murphy and, consequently, the City of Montgomery was negligent in its training and supervision of Walker and Chavez without providing any supporting evidence does not make it so and certainly does not meet Childress's onerous burden to establish municipality liability under § 1983.  Indeed, at the end of the day, Childress's arguments are premised on a theory of *respondeat superior*, which is not an appropriate basis for municipal liability under § 1983.  Thus, Defendants' motion for summary judgment is

31

GRANTED as to all of Childress's § 1983 official capacity claims against Walker, Chavez, and Murphy.

**B.     Claims Pursuant to 42 U.S.C. § 1985**

In addition to his § 1983 claims, Childress asserts a claim against "Defendants" for civil conspiracy to deprive him of his First Amendment rights in violation of 42 U.S.C. § 1985.  (Doc. #1-1, Count VIII.)  Again, it is unclear from the face of the Complaint which "Defendants" Childress is asserting this claim against: Walker, Chavez, and Murphy, or another combination of two.  It is also unclear from the Complaint whether Childress is asserting this claim against these Defendants in their individual capacities, their official capacities, or both.  Clarification of these issues, however, is unneeded, as Childress has conceded his civil conspiracy claim by failing to address it in response to Defendants' summary judgment motion.  *See Glass*, 786 F. Supp. 2d at 210.

Even if Childress had responded in some meaningful way to Defendants' summary judgment arguments on his civil conspiracy claim, this claim would still fail as a matter of law.  Section 1985 precludes two or more persons from conspiring to interfere with civil rights.  Because Childress did not specify in his Complaint which subsection of § 1985 he is proceeding under, the Court can only presume from the allegations of the Complaint that he intended to assert a claim against Defendants under § 1985(3),[19] which applies to civil

---

[19]  The other two subsections of § 1985 are inapplicable to this case.  Subsection (1) applies to civil conspiracies to prevent officers from performing certain duties and provides:

> If two or more persons in any State or Territory conspire to prevent, by force, intimidation, or threat, any person from accepting or holding any office, trust, or

conspiracies to deprive a person of "rights or privileges."   42 U.S.C. § 1985(3).   This

subsection, however, is rooted in the concept of equal protection, which would require

Childress to "show a racial or otherwise class-based discriminatory animus."   *Woodard v.*

*Town of Oakman*, 885 F. Supp. 2d 1216, 1236 (N.D. Ala. 2012).   Childress has not and

cannot make such a showing here.   Therefore, Defendants' motion for summary judgment

on Childress's civil conspiracy claim is GRANTED.

## C.   Municipal Liability Claim Pursuant to Ala. Code § 11-47-190

In opposition to Defendants' motion for summary judgment, Childress attempts to

---

place of confidence under the United States, or from discharging any duties thereof; or to induce by like means any officer of the United States to leave any State, district, or place, where his duties as an officer are required to be performed, or to injure him in his person or property on account of his lawful discharge of the duties of his office, or while engaged in the lawful discharge thereof, or to injure his property so as to molest, interrupt, hinder, or impede him in the discharge of his official duties[.]

42 U.S.C. § 1985(1).   Subsection (2), on the other hand, applies to civil conspiracies to obstruct justice or intimidate parties, witnesses, or jurors and provides:

If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; of if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws[.]

42 U.S.C. § 1985(2).   Neither of these subsections apply to the allegations set forth in Childress's Complaint.

33

allege for the first time a claim against the City of Montgomery under Ala. Code § 11-47-190, based on the purported neglectfulness, unskillfulness, and carelessness of its agents, employees, or officers (*i.e.*, Walker, Chavez, and Murphy). (Doc. #19.) Childress argues this claim in his opposition brief despite the fact that he never pled such a claim in his Complaint and has never sought leave to add such a claim through an amendment to his Complaint. (Doc. #1-1.) Further, even though the City of Montgomery has defended Childress's official capacity claims against Walker, Chavez, and Murphy, the City of Montgomery has never been named as a defendant in this action, and the City of Montgomery Police Department was dismissed early in this litigation as a legal entity not subject to suit under § 1983. (Doc. #9.)

Although Defendants failed to address Childress's § 11-47-190 argument in their summary judgment reply, it is well-settled that a plaintiff may not amend his complaint through argument in a brief opposing summary judgment. *See, e.g., Gilmour v. Gates, McDonald and Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004). As such, the Court will not entertain Childress's dilatory attempt to assert a claim against the City of Montgomery under § 11-47-190 through arguments in opposition to Defendants' summary judgment motion.

## VI.  CONCLUSION

For the reasons stated above, it is hereby ORDERED as follows:

(1)    Defendants' Motion for Summary Judgment (Doc. #15) is DENIED with respect to Childress's individual capacity claims asserted against Walker and Chavez in Counts I, II, III, and V of the Complaint;

34

(2)     Defendants' Motion for Summary Judgment (Doc. #15) is GRANTED with respect to Childress's individual capacity claims asserted against Walker and Chavez in Count IV of the Complaint;

(3)     Defendants' Motion for Summary Judgment (Doc. #15) is GRANTED with respect to Childress's individual capacity claims asserted against Murphy in Counts IV, V, VI, and VII of the Complaint;

(4)     Defendants' Motion for Summary Judgment (Doc. #15) is GRANTED with respect to Childress's civil conspiracy claim asserted against all Defendants in Count VIII of the Complaint;

(5)     Defendants' Motion for Summary Judgment (Doc. #15) is GRANTED with respect to all claims asserted against Walker, Chavez, and/or Murphy in their official capacities.

DONE this the 30th day of April, 2013.

            /s Mark E. Fuller
UNITED STATES DISTRICT JUDGE